WAYNE C. MAYER (62031)
Law Offices of Wayne C. Mayer
4619 Van Dyke Avenue
San Diego, CA 92116
(619) 281-9263
fax (619) 281-2963

Attorney for Material Witnesses: MIRTA LUNA PORTILLO
HECTOR GUZMAN GARCIA
JAIME ANTONIO PRECIADO GARCIA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SERGIO PRECIADO DIAZ; CONCEPCION GARCIA OROZCO,<br><br>Defendant(s). | Case No.: 07 MJ 2966<br><br>POINTS AND AUTHORITIES IN SUPPORT OF MIRTA LUNA PORTILLO, HECTOR GUZMAN GARCIA, JAIME ANTONIO PRECIADO GARCIA'S MOTION FOR VIDEO TAPED DEPOSITION<br><br>DATE: 1-22-08<br>TIME: 9:30 a.m..<br>DEPT: Papas |

Material witnesses MIRTA LUNA PORTILLO, HECTOR GUZMAN GARCIA and JAIME ANTONIO PRECIADO GARCIA (hereafter "Material Witnesses") by and through their counsel, Wayne C. Mayer, submit the following Memorandum of Points and Authorities in support of their motion for a court order to take the Material Witnesses videotaped deposition.

**I.**

**INTRODUCTION**

On or about December 21, 2007, the material witnesses were detained by the United States Customs and Border Protection Special Response Team in connection with the arrest of defendants in the above-entitled case. The defendants were charged with intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens had come to, did bring said aliens to the United States and upon arrival did not bring and present said aliens immediately to an appropriate immigration officer and remained in the United States in violation of law, did transport and move, said aliens within the United States in violation of Title 8 U.S.C. sec. 1324 (a)(1)(A)(iii). The material witnesses were observed/ discovered by the agents when the agents executed a federal search warrant on a residence located in National City, California after the Agents had established probable cause that violations of federal law under 8 USC 1324 (alien smuggling) were occurring at the residence.

At approximately 10:55 a.m. Border Patrol agents approached the residence and deployed multiple Agents to serve the search warrant. As the Agents entered through a wooden car gate, they observed three Hispanic male subjects seated in the rear of a blue 1997 Volkswagon Jetta. The Agents identified themselves and detained/secured all three subjects for officer safety.

At the same time as this was occurring, a female, later identified as defendant two (2) CONCEPCION GARCIA OROZCO (hereinafter GARCIA) observed the agents and ran into the interior of the residence out of sight. Defendant GARCIA attempted to escape through the kitchen area but was unable to work the key and subsequently was verbally dissuaded by other Agents present outside the residence at the exit. Seconds later agents apprehended defendant GARCIA as they cleared the house. During a later search of the residence a cell phone was located in a trash bag where defendant GARCIA was detained and handcuffed. The phone was seized. Defendant GARCIA was escorted to the main room of the residence. When she reached this area she was placed on her stomach for safety reasons and a fanny pack type purse was released from defendant GARCIA. A search of the fanny pack purse from GARCIA revealed

two large wads of U.S. currency inside the fanny pack. The money was seized as proceeds to alien smuggling.

Agents Chapa and Seiler entered a wide passage room to the rear of the house and encountered a Hispanic male, who was secured and identified as defendant one (1) SERGIO PRECIADO DIAZ wearing a white sweater next to a sofa that had a sealed white envelope, tow cell phones and a single vehicle key on one of the cushions.

The envelope was determined to contain U.S. paper currency and a list of money figures. This amount had also been written on the outside of the envelope. The key was impounded and determined to be for the blue Volkswagen Jetta vehicle parked in the driveway at the time of the execution of the search warrant. The Volkswagen Jetta contained three illegal aliens waiting to be transported north.

Agents continued to clear the residence and located four males and a female in a second bedroom which was unkempt with bedding items and stockpiled clothing. All subjects were secured.

Agents located and secured two individuals in the front room. One of those detained from the front room is now identified as the material witnesses MIRTA LUNA PORTILLO. Also located in the front room, which appeared to be the main sleeping area agents discovered a list of Hispanic names that had corresponding nicknames assigned to them. Based on the agent's experience this was interpreted as a record keeping ledger for purposes of giving credit for aliens transported or delivered. To the left of each entry was a letter notation in which four were clearly marked with "L.A." This was interpreted to mean transported to Los Angeles. A second list was also present. During the search of the residence agents recovered additional lists of Hispanic names. Several had references to "L.A.". One entry had the name "Connie" associated with it.

The witnesses who are the subject of this motion MIRTA LUNA PORTILLO, HECTOR GUZMAN GARCIA and JAIME ANTONIO PRECIADO GARCIA (hereafter "Material Witnesses") were all detained at the residence which is the subject of the federal search warrant. The material witnesses MIRTA LUNA PORTILLO, HECTOR GUZMAN GARCIA and JAIME ANTONIO PRECIADO GARCIA were identified and indicated they could implicate the defendants as the driver of the Volkswagen jetta and GARCIA as the person in charge of the residence where they were detained.

The material witnesses are three of the illegal aliens detained that day by the United States Border Patrol for prosecution of the defendants. These three witnesses MIRTA LUNA PORTILLO, HECTOR GUZMAN GARCIA and JAIME ANTONIO PRECIADO GARCIA have no one in the United States who can assist them in making or posting bond and therefore they will remain in custody pending a resolution of this matter.

The material witnesses and defendants were transported to the Border Patrol station, read their Miranda rights, stated they understood their rights and were willing to make statements about the offense without an attorney being present. The defendant SERGIO PRECIADO DIAZ admitted he is illegally in the United States without any immigration documents allowing him to enter the United States legally. PRECIADO admitted he is a member of a northbound transportation cell and that he works as a load driver transporting undocumented aliens from San Diego to the Los Angeles area. PRECIADO admits he is paid $100 USD for each undocumented alien he successfully transports. He further admitted that he has been working in this capacity for the last six months and drivers about 2 or 3 times per weeks taking 3-4 aliens per trip and has made approximately 45 loads of illegal aliens to the Los Angeles area. He admits that he is aware the persons he transports are illegal. He also admits that he has been arrest by the U. S. Border patrol in the past and voluntarily returned to Mexico.

Defendant PRECIADO indicated he had been told to pick up an illegal alien (later identified as material witness MIRTA LUNA PORTILLO) in Los Angeles and take the illegal back to San Diego. He was told the subject was accidentally taken to Los Angeles and needed to be brought back to San Diego. He was given the address in the L.A. area and picked this individual up for transportation back to San Diego. During the trip with this individual back to San Diego he was called on his cellular telephone and given directions to the house in San Diego where the agents executed the search warrant and where he was arrested. He was also told he would be picking up four additional undocumented aliens at the house and bringing them north to Los Angeles taking them to the Miliken Exit off-ramp of I-10 where he would be told via cell phone the meeting point where he would be told where he was to hand over the aliens to somebody else.

Defendant PRECIADO said that upon arriving at the load house a lady (defendant GARCIA) told him to pull in through vehicle gate into the yard and he did so. After parking he got out of the vehicle along with the smuggled alien and entered the house. Defendant PRECIADO said he had both his cell phones, the keys to the car, and the envelope containing the money in his hands. The lady (GARCIA) at the residence then told the aliens to get into the Volkswagen and told PRECIADO there were five smuggled aliens to be moved to L.A. The aliens started to load themselves into the Volkswagen.

PRECIADO states it was at this point that he glanced out the window and saw a large number of federal agents pull up outside and swarm into the yard and residence. He sat down, put down the cell phones, car key and money and waited for the agents.

PRECIADO was shown 10 color Polaroid photographs and identified the photo of CONCEPCION GARCIA OROZCO as the lady that runs the load house.

Defendant CONCEPCION GARCIA OROZCO admitted she became desperate for money. She approached some smugglers whom she met at the Blue Agave on Mission Gorge Road offering to work for them. She was asked to use her house to stash illegal aliens and she agreed. Defendant GARCIA was to be paid $25 for each smuggled alien who she harbored in her house. She admitted she had been harboring undocumented aliens at the house for the past three months. She admits she may have harbored about 200 illegal aliens during this three month period. She also admitted to working for three other smuggler in the northbound transportation cell.

Material witness MIRTA LUNA PORTILLO admitted she is a citizen and national of Honduras and she had been transported from L.A. to San Diego by defendant PRECIADO who drove the car. She indicated that her husband could not pay the smuggling fee and was being returned for returned to San Diego for return to Mexico for that reason.

HECTOR GUZMAN GARCIA and JAIME ANTONIO PRECIADO GARCIA stated they are citizens and nationals of Mexico without valid immigration documents to enter or remain in the United States legally. They indicated they were to pay a smuggling fee of between $2000 and $3000. They admitted that the defendant CONCEPCION GARCIA OROZCO was the caretaker of the house giving orders, organizing and giving instructions and explaining to the witnesses what they could expect. They both identify the defendant CONCEPCION GARCIA OROZCO as being in charge of the residence. They also identified a photograph of defendant PRECIADO as the man who was to be their driver north to Los Angeles.

MIRTA LUNA PORTILLO, HECTOR GUZMAN GARCIA and JAIME ANTONIO PRECIADO GARCIA were detained for prosecution of the defendants.

All the witnesses indicate to me that they have family who rely upon them for support and needs and need to work to support their families.

The material witnesses have indicated to me they have no family or friends in the United States that could assist the witnesses in posting a material witness bond and therefore will remain in custody until the defendants pleads guilty or their testimony is preserved by a video deposition.

It is unnecessary to keep the Material Witnesses in custody because their testimony can be preserved through the use of a videotape deposition. The Material Witnesses therefore request a court order that testimony of the Material Witnesses MIRTA LUNA PORTILLO, HECTOR GUZMAN GARCIA and JAIME ANTONIO PRECIADO GARCIA be preserved through the use of videotape deposition and, thereafter, that the material witnesses be allowed to return to Honduras and Mexico respectively.

## II.

## THE TESTIMONY OF THE MATERIAL WITNESSES CAN BE SECURED BY VIDEOTAPE DEPOSITION AND THERE IS NO COMPELLING REASON TO KEEP THEM IN THIS COUNTRY

Section 3144 of Title 18 of the United States Code provides:

> No material witness may be detained…if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice.

A material witness may request that his deposition be taken and that he be released at the conclusion of the deposition. [Federal Rules Crim. P. 15(a)]. Where the material witness's motion demonstrates his testimony "can be adequately secured by deposition" and that "further detention is not necessary to prevent a failure of justice" the court *must* order his deposition and

prompt release.[1] Torres-Ruiz v. United States 120 F.3d 933, 935 (9th Cir. 1997) [citing Aguilar-Ayala v. Ruiz 973 F.2d 411, 413 (5th Cir. 19920]. See also, 8 U.S.C. sec. 1324(d), Federal Rules of Evidence 804, and Federal Rules of Criminal Procedure 15.

1. The Material Witnesses' Testimony Can Be Adequately Secured By Deposition

The Material Witnesses should not be detained because their testimony can be adequately secured by deposition. This is a routine alien smuggling case. My clients were present when government officials executed a search warrant on the residence in which they were discovered. Based on interviews with the Material Witnesses and the report submitted by the arresting agency, the facts to which the Material Witnesses are competent to testify are straightforward. (see Mayer Declaration at para. 9). Moreover, the Government's case does not depend on the testimony of the Material Witnesses alone. Both defendants confess (see Mayer Declaration at para. 14-16) and neither the Material Witnesses nor their counsel has been informed by either the government or defense attorneys of any reason why MIRTA LUNA PORTILLO, HECTOR GUZMAN GARCIA and JAIME ANTONIO PRECIADO GARCIA's testimony cannot be adequately secured by deposition. (see Mayer Declar. Para. 21).

2. Further Detention of the Material Witnesses Is Not Necessary To Prevent a Failure of Justice

Deposition of material witness may be used at trial in criminal cases, so it is only in *exceptional circumstances*, where the interests of justice will be denied, that a videotape deposition is not appropriate. See Torres-Ruiz v. United States 120 F.3d at 936 (9th Cir. 1997); 8

---

[1] While a witness may be detained for a reasonable period of time, the court must vigilantly guard an undocumented alien's "overriding liberty interest" and schedule a videotape deposition at the earliest possible time. See, Aguilar-Ayala v. Ruiz, 973 F.2d 411, 419 (5th Cir.1992).USDCT not and mo video

U.S.C. sec. 1324(d), Federal Rules of Evidence 804, and Federal Rules of Criminal Procedure 15.

Defendants may be present at the videotape deposition and therefore have a full and fair opportunity to confront and cross-examine the witness. The videotape provides sufficient indicia of reliability to afford the trier of fact a satisfactory basis for evaluating the truth of a statement. Dutton v. Evans 400 U.S. 89 (1970).

The government or defendant can effectuate the detention of a material witness upon a showing that (1) the material witness will, in all likelihood, be unavailable to testify for trial, and (2) that the use of deposition testimony will deny the defendant a fair trial and that live testimony would somehow be significantly different. See Aguilar-Ayala v. Ruiz 973 F.2d 413 (5th Cir. 1992), United States v. Humberto-Rivera 859 F.2d 1204, 1208 (4th Cir. 1988). That would be a difficult burden in this case because the Material Witness has indicated he will voluntarily return for trial. (see Mayer declar. para. 24)[2]

Neither the Material Witnesses nor his counsel has been informed by either the government or defense attorney(s) of any reason why detention is necessary to prevent a failure of justice. (see Mayer decal. para. 22)

For these reasons, the Material Witnesses request that the Court immediately order the taking of their videotape deposition, and thereafter that they be immediately returned to their country of origin.

## III.

## IF THE COURT DENIES THE MATERIAL WITNESSES' REQUEST TO TAKE THEIR VIDEOTAPE DEPOSITION, THEY REQUEST THAT THE

[2] The government would undoubtedly take reasonable steps to secure the witness's testimony at trial by personally subpoenaing the witness, providing travel costs, and arranging for legal re-entry of the alien (See United States v. Eufracio-Torres 890 F.2d 266, 270.

**GOVERNMENT PROVIDE THEM WITH A STATEMENT OF REASONS WHY THEY HAVE TO REMAIN IN CUSTODY**

Where a witness has been held in custody for more than 10 (ten) days, the government has an obligation to prepare a biweekly report stating the reasons why such witness should not be released with or without the taking of a deposition. [Fed. Rules Crim. Proc., Rule 46(g)].

The Material Witnesses are not aware of any reason why he should remain in custody, but to the extent the government knows of any such reason, they hereby request that the government provide their with a copy of a biweekly written report indicating these reasons.

## IV.

## CONCLUSION

For the foregoing reasons, the Material Witnesses respectfully requests that their Motion for the Taking of Videotape Deposition be granted. In the alternative, the witnesses request that they immediately be provided with a statement of reasons why they need to remain in custody.

Dated: January 3, 2008

s/ Wayne C. Mayer
Wayne C. Mayer
Attorney for Material Witnesses
MIRTA LUNA PORTILLO
HECTOR GUZMAN GARCIA
JAIME ANTONIO PRECIADO GARCIA