KAREN P. HEWITT
United States Attorney
FRED SHEPPARD
Assistant United States Attorney
California State Bar No. 250781
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7176
Facsimile: (619) 235-2757
Email: fred.sheppard@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SERGIO PRECIADO-DIAZ,<br><br>Defendant. | CRIMINAL CASE NO. 3:08-CR-0095 BEN<br><br>DATE: February 25, 2008<br>TIME: 2:00 p.m.<br><br>GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANTS' MOTIONS<br><br>[17-1] TO COMPEL DISCOVERY AND PRESERVE EVIDENCE; AND<br>[17-2] GRANT LEAVE TO FILE FURTHER MOTIONS.<br><br>TOGETHER WITH A STATEMENT OF THE FACTS AND THE MEMORANDUM OF POINTS AND AUTHORITIES, AND GOVERNMENT'S MOTIONS FOR:<br><br>(1) RECIPROCAL DISCOVERY |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Fred Sheppard, Assistant United States Attorney, hereby files its Response and Opposition to Defendant's Motions for Discovery and its Motion for Reciprocal Discovery. This response and motion is based upon the files and records of the case together with the attached statement of facts and memorandum of points and authorities.

# I

## STATEMENT OF THE CASE

On January 8, 2008, the Government filed a ten-count indictment charging Jose Villareal-Ramos, Concepcion Garcia-Orozco, Isaac Ramirez-Marquez and Sergio Preciado-Diaz with various criminal violations, including:

(1) 8 U.S.C. §§ 1324(a)(A)(ii), (iii), (v)(I) - Conspiracy to Transport and Harbor Illegal Aliens (Count 1)

(2) 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2 - Bringing in Illegal Aliens for Financial Gain and Aiding and Abetting (Counts 2 and 3)

(3) 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II) - Transportation of Illegal Aliens and Aiding and Abetting (Counts 4, 5 and 8)

(4) 8 U.S.C. § 1324(a)(1)(A)(iii) and (v)(II) - Harboring Illegal Aliens and Aiding and Abetting (Counts 6, 7 and 9)

(5) 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II) - Attempting Transportation of Illegal Aliens and Aiding and Abetting (Count 10)

Defendant Sergio Preciado-Diaz ("Defendant") is named as a defendant in Counts 1, 6, 7, 8, 9 and 10. On January 10, 2008, Defendant was arraigned on the Indictment and entered a plea of not guilty.

# II

## STATEMENT OF FACTS

On December 12, 2007, border patrol agents were conducting surveillance of a residence located at 425 17th Ave., National City, California (hereinafter "the load house"), and observed a black SUV arrive and enter the fenced (and partially hidden from observation) drive of the residence. Subsequently, the SUV was observed leaving the load house and appeared to have only two occupants (driver and front passenger) upon leaving the residence, the rear of the vehicle was riding lower than the front of the vehicle.

Border patrol agents curbed the vehicle on the northbound I-15 expressway. In addition to the driver, later identified as Isaac Ramirez-Marquez, and passenger, agents discovered two female subjects

slumping down in the backseat of the SUV, one male subject laying on the floor between the first and second rows of seats and two more male subjects laying in the rear cargo area. All occupants of the SUV, including Isaac Ramirez-Marquez (driver), admitted to being nationals of Mexico with no legal right to enter or remain in the United States. Two of the illegal aliens, Fernando Hernandez-Vazquez and Jose Francisco Sanchez-Rubi, are material witnesses in this case.

According to Fernando Hernandez-Vazquez, he had promised to pay $2700.00 in order to be smuggled Mexico to Anaheim, California. When interviewed, Hernandez-Vazquez stated he came across the border from Mexico into the United States on or about December 8, 2007, with a group of individuals. Hernandez-Vazquez stated that Jose Villareal-Ramos was one of the foot guides for the group. After being led across the border by Villareal-Ramos, Hernandez-Vazquez was taken to the load house. According to Hernandez-Vazquez, Concepcion Garcia-Orozco was the caretaker at the load house. Hernandez-Vazquez stayed at the load house until December 12, 2007, when he was picked up from the load house by Isaac Ramirez-Vazquez, in order to be driven to northern California.

According to Jose Francisco Sanchez-Rubi, he had promised to pay $2500.00 in order to be smuggled from Mexico to Los Angeles, California. When interviewed, Sanchez-Rubi stated he came across the border from Mexico into the United States on or about December 11, 2007, and Jose Villareal-Ramos was one of the foot guides for the group. After being led across the border by Villareal-Ramos, Sanchez-Rubi was taken to the load house. According to Sanchez-Rubi, Concepcion Garcia-Orozco was the caretaker at the load house. The following day, December 12, 2007, Sanchez-Rubi was picked up from the load house by Isaac Ramirez-Vazquez, in order to be driven to northern California.

On December 21, 2007, border patrol agents executed a search warrant at the load house. During the execution of that search warrant, ten individuals were discovered and detained, including Concepcion Garcia-Orozco and Sergio Preciado-Diaz. Nine of the individuals, including the two defendants, admitted to being nationals of Mexico with no legal right to enter or remain in the United States. Mirta Yolanda Luna-Portillo, a material witness, admitted to being a national of Honduras with no legal right to enter or remain in the United States.

Immediately prior to the execution of the search warrant, border patrol agents observed an individual, later identified as Sergio Preciado-Diaz, drive a Volkswagon Jetta into the drive of the load

house. Upon execution of the search warrant, three illegal aliens were discovered inside the Volkswagon Jetta, including Jaime Avntonio Preciado-Garcia (M/W Preciado-Garcia), a material witness in this matter. According to M/W Preciado-Garcia, he had promised to pay $2200.00, to be smuggled from Mexico to Los Angeles, California. After crossing the border from Mexico into the United States on or about December 20, 2008, M/W Preciado-Garcia was taken to the load house, where he was cared for by Concepcion Garcia-Orozco, until he was loaded into Sergio Preciado-Garcia's Volkswagon Jetta to be driven to Los Angeles. At this point, border patrol agents arrested M/W Preciado-Garcia, along with two other illegal aliens.

The other two material witnesses, found inside the load house, were Hector Guzman-Garcia and Mirta Yolanda Luna-Portillo. According to Guzman-Garcia, he had promised to pay $1800.00, in order to be smuggled Mexico to Escondido, California. Guzman-Garcia stated he crossed the border into the United States on or about December 18, 2007, and he was taken to the load house, where he stayed until he was mistakenly transported to Los Angeles. Guzman-Garcia indicated he stayed in the Los Angeles area until Sergio Preciado-Garcia drove him back to the load house at, on December 21, 2007. Guzman-Garcia identified Concepcion Garcia-Orozco as the person who was the caretaker at the load house on both occasions he was present.

The second material witness found inside the load house at 425 17th Ave., was Mirta Yolanda Luna-Portillo. According to Luna-Portillo, she had promised to pay $1500.00 in order to be smuggled from Mexico to Los Angeles, California. After being guided across the border from Mexico into the United States, Luna-Portillo was taken to the load house. Luna-Portillo was then transported to the Los Angeles area where her boyfriend was unable to pay the smuggling fee. Luna-Portillo was held at a house in the Los Angeles area until she could be transported back south in order to be taken back to Mexico. Luna-Portillo identified Sergio Preciado-Garcia as being present at the load house in Los Angeles where she was held until she was transported back to the load house. Luna-Portillo states she was taken care of at the load house by Concepcion Garcia-Orozco.

//

//

//

## III

## GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION FOR DISCOVERY

The United States intends to fully comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jenks Act, 18 U.S.C. § 3500, and Rule 16 of the Federal Rules of Criminal Procedure. Thus far, the United States has produced 274 pages of discovery and several compact discs of statements. Defendants' specific requests are addressed below.

**(1) The Defendant's Statements**

The United States recognizes its obligation under Rule 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendants the substance of Defendant's oral statements and Defendant's written statements. The United States has produced all of Defendant's oral and written statements that are known to the undersigned Assistant U.S. Attorney at this date and all available compact discs. If the United States discovers additional written or oral statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided to Defendant.

The United States has no objection to the preservation of the handwritten notes taken by any of the United States' agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the United States objects to providing Defendant with a copy of any rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The United States is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined under 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case do not constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was

available in other forms). The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to Defendants that is material to guilt or punishment. Brown, 303 F.3d at 595-96 (rough notes not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to the Defendants.

**(2) Arrest Reports, Notes and Dispatch Tapes**

The United States has provided the Defendant with arrest reports. As noted previously, agent rough notes, if any exist, will be preserved, but they will not be provided as part of Rule 16 discovery. The United States is unaware of any dispatch tapes regarding Defendant's apprehension, but has requested the Border Patrol to preserve these if they do exist. If the United States becomes aware of such dispatch tapes, and those tapes fall under Rule 16 discovery obligations, the United States will provide those tapes.

**(3) Brady Material**

Again, the United States is well aware of and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendants, however, is not entitled to all evidence known or believed to exist which is, or may be, favorable to either of the accused, or which pertains to the credibility of the United States' case. As stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." Id. at 774-775 (citation omitted).

The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

Although the United States will provide conviction records, if any, which could be used to impeach a witness, the United States is under no obligation to turn over the criminal records of all

witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

Finally, the United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

**(4) Sentencing Information**

Defendants claim that the United States must disclose any information affecting Defendant's sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83 (1963). The United States respectfully contends that it has no such disclosure obligation under Brady.

The United States is not obligated under Brady to furnish a defendant with information which he already knows. United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the defendant. In such case, the United States has not suppressed the evidence and consequently has no Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

But even assuming Defendant does not already possess the information about factors which might affect their guideline ranges, the United States would not be required to provide information bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior to his sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value."). Additionally, the United States is unaware of any cooperation, or even attempted cooperation, provided by Defendant. Accordingly, Defendant's demand for this information is premature.

**(5) Defendant's Prior Record**

The United States will provide the Defendant with a copy of his criminal record in accordance with Federal Rule of Criminal Procedure 16(a)(1)(B).

**(6) Proposed 404(b) and 609 Evidence**

Should the United States seek to introduce any similar act evidence pursuant to Federal Rules

of Evidence 404(b) or 609, the United States will provide Defendant with official notice of its proposed use of such evidence and information about such bad act at the time the United States' trial memorandum is filed.

**(7) Evidence Seized**

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

The United States, however, need not produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

**(8) Preservation of Evidence**

The United States will preserve all evidence to which Defendant is entitled pursuant to the relevant discovery rules. However, the United States objects to any blanket request to preserve all physical evidence.

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within his possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or intended for use by the United States as evidence in chief at trial, or obtained from or belong to Defendant, including photographs. The United States has made the evidence available to Defendant and his investigators and will comply with any request for inspection.

**(9) Tangible Objects**

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or intended for use by the United States as evidence during its case-in-chief at trial, or obtained from or belongs to Defendant. The United States is unaware of any narcotics involved in this alien smuggling case, as mentioned by the Defendant in Section II(10) of his Memorandum. The

United States need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984). The United States

**(10) Evidence of Bias or Motive to Lie**

The United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

**(11) Impeachment Evidence**

As stated previously, the United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

**(12) Criminal Investigation of Government Witness**

Defendant is not entitled to any evidence that a prospective witness is under criminal investigation by federal, state, or local authorities. "[T]he criminal records of such [Government] witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976); United States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records of prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United States v. Rinn, 586 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that the Government has no discovery obligation under Fed. R. Crim. P. 16(a)(1)(C) to supply a defendant with the criminal records of the Government's intended witnesses.") (citing Taylor, 542 F.2d at 1026).

The United States will, however, provide the conviction record, if any, which could be used to impeach witnesses the United States intends to call in its case-in-chief. When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

**(13) Evidence Affecting Perception, Recollection, Communication or Truth-Telling**

The United States is unaware of any evidence indicating that a prospective witness has a problem with perception, recollection, communication, or truth-telling.

**(14) Witness Addresses**

The Government has already provided Defendant with the reports containing the names, work

addresses, and telephone numbers of the inspectors, officers and special agents whom asked questions of Defendant and found the marijuana in the vehicle. In its trial memorandum, the Government will provide Defendant with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required. See United States v. Discher, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987). The Government strenuously objects to providing the home addresses or the home or personal cellular telephone numbers to Defendant. In non-capital cases, the Government is not even required to disclose the names of its witnesses prior to trial. United States v. Dishner, 974 F.2d 1502, 1522 (9th Cir 1992); (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)); United States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996); see also United States v. Bejasa, 904 F.2d 137 (2d Cir. 1990) (holding that United States did not improperly deny defendant access to government witnesses whose telephone numbers and addresses the government refused to provide because defendant knew the identities of the government witnesses and presumably knew their telephone numbers or could have contacted them through the exercise of due diligence).

**(15) Name of Witnesses Favorable to the Defendant**

The Government is not aware of the names of any witnesses favorable to the Defendant's case. If the Government discovers any witnesses favorable to Defendant, the names of such witnesses will be promptly provided.

**(16) Statements Relevant to the Defense**

The Government will provide all statements relevant to Defendant as required by Rule 16, Brady, and Jencks. The Government is not all possible information and evidence regarding any speculative defense claimed by Defendant. Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure under Brady).

**(17) Jencks Act Material**

The Jencks Act, 18 U.S.C. § 3500, requires that, after a United States witness has testified on direct examination, the United States must give the Defendant any "statement" (as defined by the Jencks Act) in its possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks Act is (1) a written statement made by

the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). While the United States is only required to produce all Jencks Act material after the witness testifies, the United States plans to provide most (if not all) Jencks Act material well in advance of trial to avoid any needless delays.

Additionally, no witness who testified before the grand jury will testify at trial, so the United States does not anticipate that it will have to provide any of the Grand Jury transcripts to Defendant.

**(18) Giglio Information**

As stated previously, the United States will comply with its obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and Giglio v. United States, 405 U.S. 150 (1972).

**(19) Reports of Scientific Tests or Examination**

The United States will provide the results of any reports of scientific tests or examinations, should any be conducted. At this time, the United States is aware of no tests or examinations which are material to the preparation of the defense or are intended for use by the United States at trial.

**(20) Henthorn Evidence**

Again, as stated in Section III(3) of this Response, the United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

**(21) Informants and Cooperating Witnesses**

If the Government determines that there is a confidential informant whose identity is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," it will disclose that person's identity to the Court for in-chambers inspection. See Roviaro v. United States, 353 U.S. 53, 60-61 (1957); United States v. Ramirez-Rangel, 103 F.3d 1501, 1505 (9th Cir. 1997). The United States has already stated it will comply with its Brady, Giglio, Jencks Act, and further Rule 16 discovery obligations. The United States will comply with the structure of Roviaro if it determines that

any confidential informant information is "relevant and helpful to the defense of [the] accused, or is essential to the fair determination of a cause." Roviaro, 353 U.S. at 60.

As the Court is aware, the Supreme Court has declined to adopt an absolute rule requiring disclosure of an informant's identity whenever it is relevant or helpful to a defendant's case. See Roviaro v. United States, 353 U.S. at 62. Indeed, as the D.C. Circuit stated in United States v. Skeens, 449 F.2d 1066, 1071 (D.C. Cir.1971), a "heavy burden ... rests on an accused to establish that the identity of an informant is necessary to his defense." Id. at 1070. "Mere speculation" that an informant's testimony may assist the defendant is not sufficient to meet this burden. United States v. Mangum, 100 F.3d 164, 172 (D.C. Cir.1996). In determining whether the Defendant has met this burden, the Court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense," all the while "taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Roviaro, 353 U.S. at 62. The United States will comply with its Rovario obligations, but it also requests that any information provided to the Defendants be subject to in camera review by the Court.

**(22) Bias by Informants or Cooperating Witnesses**

As stated in Section III(12), the United States is unaware of any evidence indicating that any prospective witness, whether Government agent, Informant, or Cooperating Witness, is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses, whether Government agent, Informant, or Cooperating Witness, have a motive to falsify or distort testimony. It will comply with its Giglio obligations if it becomes aware of any indication of bias on behalf of any of these witnesses.

**(23) Residual Request**

The United States has already complied with Defendant's request for prompt compliance with its discovery obligations prior to Indictment. The United States will continue to comply with all of its discovery obligations, but objects to the broad nature of Defendant's further discovery requests.

//

//

//

## IV

## NO OPPOSITION TO DEFENDANT'S REQUEST FOR LEAVE TO FILE FURTHER MOTIONS

The United States does not object to the granting of leave to allow Defendants to file further motions, as long as the order applies equally to both parties and additional motions are based on newly discovered evidence or discovery provided by the United States subsequent to the instant motion at issue.

## V

## MOTION FOR RECIPROCAL DISCOVERY

The United States hereby moves for reciprocal discovery from the Defendant. To date Defendant has not provided any. The United States, pursuant to Rule 16 of the Federal Rules of Criminal Procedure, requests that Defendant permit the United States to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, or make copies of portions thereof, which are within the possession, custody or control of Defendant and which Defendant intends to introduce as evidence in their case-in-chief at trial.

The United States further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession or control of Defendant, which Defendant intend to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendants intend to call as a witness. Because the United States will comply with Defendant's request for delivery of reports of examinations, the United States is entitled to the items listed above under Rule 16(b)(1) of the Federal Rules of Criminal Procedure. The United States also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the United States receives the discovery to which it is entitled.

In addition, Rule 26.2 of the Federal Rules of Criminal Procedure requires the production of prior statements of all witnesses, except a statement made by Defendant. This rule thus provides for the reciprocal production of Jencks statements. The time frame established by the rule requires the statement to be provided after the witness has testified. To expedite trial proceedings, the United States hereby requests that Defendant be ordered to supply all prior statements of defense witnesses by a

reasonable date before trial to be set by the Court. Such an order should include any form in which these statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes and/or reports.

## VI

## CONCLUSION

For the above stated reasons, the United States respectfully submits its Response and Opposition to Defendant's Motions for Discovery, and requests that its Motion for Reciprocal Discovery be granted.

DATED: February 22, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ *Fred Sheppard*

Fred Sheppard
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JOSE VILLAREAL-RAMOS,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 08 CR 0095 BEN<br><br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED THAT:

I, Fred Sheppard, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of the Response and Opposition to Defendant's Motions for Discovery and its Motion for Reciprocal Discovery for the United States, dated February 22, 2008, and this Certificate of Service, dated February 22, 2008, on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them:

**Leila Morgan**
Attorney for Defendant Jose Villareal-Ramos
**Benjamin Lechman**
Attorney for Defendant Concepcion Garcia-Orozco
**Merle Schneidewind**
Attorney for Defendant Sergio Preciado-Garcia
**Wayne Mayer**
**Gayle Mayfield**
Attorneys for Material Witnesses

I declare under penalty of perjury that the foregoing is true and correct.
Executed on February 22, 2008.

/s/ *Fred Sheppard*
Fred Sheppard
Assistant United States Attorney